IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| THE TINDER BOX INTERNATIONAL, LTD. | : : : | CIVIL ACTION |
| v. | : : | |
| JOHN W. PATTERSON, et al. | : | NO. 07-cv-05014-JF |

MEMORANDUM

Fullam, Sr. J.                                                      June 7, 2010

   Plaintiff alleges that Defendants breached the parties' franchise agreement, wrongly used plaintiff's protected marks, and unlawfully competed with plaintiff by operating as an unauthorized franchise store. After a two-day, non-jury trial on liability, the following discussion constitutes my findings of fact and conclusions of law.

   Plaintiff, Tinder Box International, Ltd., is a franchisor of retail stores that sell various tobacco products, as well as other accessories and gifts. Defendants are John and Elizabeth Patterson (husband and wife), and their corporate entity, Storyville Enterprises.[1] On October 10, 1996, plaintiff executed a franchise agreement with Mr. Patterson, who signed on

---

[1] Mrs. Patterson passed away after trial, and defense counsel has filed a suggestion of death, but none of the parties have sought that this Court take any particular action. In effect, it is stipulated that she is no longer a party to this litigation.

behalf of yet-to-be-formed Storyville.  Pursuant to that agreement, Storyville opened a Tinder Box store in Savannah, Georgia.

The franchise agreement governed all material aspects of the parties' relationship.  It allowed defendants to open their Tinder Box store and purchase Tinder Box-branded products for resale; in return, defendants paid a franchise fee of $25,000 and monthly royalties.  The agreement conveyed franchise-rights to defendants for a period of ten years, and it allowed defendants, at their option, to renew the franchise for an additional five years, subject to a number of pre-conditions.  If the agreement expired, defendants were required to cease using Tinder Box's proprietary marks as well as its "confidential methods and procedures," promptly pay all sums that were owed to plaintiff, and observe a one-year non-competition clause.

By its own terms, the franchise agreement expired on October 10, 2006.  At that time, both of the Pattersons were working at the store, but they did not realize that the agreement had expired.  Similarly, although the administration of franchise agreements was a "collective effort" among plaintiff's employees, no one at the company noticed the expiration.  Both parties continued to operate as they had during the previous ten years.

In February 2007, the parties discovered their oversight and attempted to negotiate a renewal of the franchise agreement. By letter dated March 2, 2007, plaintiff's in-house counsel recognized that the agreement had expired on October 10, 2006, and that defendants had continued to operate the business "[d]espite not having formally renewed the franchise . . . ." Notwithstanding this continued operation, plaintiff offered to renew, and after roughly two weeks, defendant declined. Plaintiff filed its complaint approximately eight months later, on November 28, 2007.

As a preliminary matter, I conclude that the parties' post-expiration conduct did not renew, extend, or alter the terms of the franchise agreement. Plaintiff argues to the contrary, citing the general principle that, where parties maintain their business relations after their contract lapses, the provisions of that contract continue to govern the relationship. See Luden's Inc. v. Local Union No. 6, 28 F.3d 347, 355-56 (3d Cir. 1994). That principle, however, only applies in the absence of contrary indications or a showing that the parties mutually intended a different result. Id.

Here, the strongest evidence of the parties' intent is found in the franchise agreement itself. The agreement

3

specifically provided that its terms reflected the parties' entire contract, and that its provisions were only alterable pursuant to another written agreement, signed by both parties. By design, the agreement anticipated its own expiration, imposed various obligations when expiration occurred (including a one-year non-competition period), and required a signed writing for any modification of its terms.  These limitations demonstrate the parties' mutual intent to prevent any implied alteration, renewal, or extension of the agreement.  See Auerbach v. Kantor-Curley Pediatric Assoc., No. 01-cv-0854, 2004 WL 870702 at *5 (E.D. Pa. Mar. 22, 2004) (Surrick, J).

The franchise agreement also contained a limitation of suit provision, which imposed a one-year limit on bringing any claim "arising out of or under [the] agreement."  The language of this provision applies to more than just contract claims that "arise under" the agreement, but it is not so broad as to encompass any claim with a mere logical or causal connection to the franchise agreement.  See John Wyeth & Brother Ltd. v. Cigna Int'l Corp., 119 F.3d 1070, 1074-75 (3d Cir. 1997) (interpreting "arising in relation to" language in forum selection clause). Here, plaintiff has asserted both contract and tort-based claims, and I conclude that the limitation of suit provision applies to

any claim that vindicates plaintiff's contract rights, regardless of whether plaintiff has styled the claim in contract or tort. See Crescent Int'l, Inc. v. Avatar Communities, Inc., 857 F.2d 943, 944 (3d Cir. 1988) ("[P]leading alternate non-contractual theories is not alone enough to avoid a forum selection clause *if* the claims asserted arise out of the contractual relation *and* implicate the contract's terms.") (emphasis added).

The limitation provision's one-year period began to run in October 2006, when plaintiff became "aware of facts or circumstances reasonably indicating" the existence of its claims. Upon expiration, the franchise agreement required defendants to remove all of their store's references to Tinder Box, cease selling all Tinder Box products, and observe the non-compete clause. After October 10, 2006, however, defendants continued to conduct business as usual. Plaintiff was aware of defendants' continued operation, so the limitation provision began running at that time. Because plaintiff filed its complaint more than one year later, it is barred from asserting claims that depend on the provisions of the franchise agreement.

I am not persuaded by plaintiff's argument that the neglect of its own employees prevented the limitation period from running. Plaintiff asserts that it first "became aware" of its

5

claims more than three months after the agreement expired, because its employees failed to timely check their records and did not notice that the expiration date had passed.  Plaintiff's president, however, signed the franchise agreement on behalf of Tinder Box International, Ltd.; so at the very least, plaintiff (as a corporate entity) had imputed knowledge of the contract's terms.  Moreover, at least three of plaintiff's employees were involved in administering its franchise agreements, and their failure to anticipate the expiration was simply unreasonable.

The inattention of plaintiff's employees does not alter the fact they were aware of defendants' continued operation, which unequivocally indicated a breach of the franchise agreement.  The limitation of suit provision, then, bars plaintiff's breach-of-contract claims, including Counts III,[2] IV, V, and VI of plaintiff's complaint.  Plaintiff's tort-based claims require additional consideration.

---

[2] In its post-trial brief, plaintiff does not address Count III, titled "Breach of In-term Covenant Not to Complete [*sic*] and Misappropriation of Trade Secrets."  In its response to defendant's post-trial memorandum, plaintiff broadly asserts that Count III is a tort claim, and that it is therefore unaffected by the franchise agreement's limitation of suit provision. Nevertheless, this count alleges a violation of the franchise agreement's prohibition on divulging certain franchisor-provided information.  Count III, however phrased, depends entirely on the existence of the parties' franchise agreement, and it is therefore barred by the limitation provision.

Plaintiff has not established that defendants are liable for tortious interference with contractual relations (Count VII). Plaintiff primarily argues that the continued operation of defendants' store violated the franchise agreement's non-compete clause, thereby preventing plaintiff from establishing a new Tinder Box store in the Savannah market. Due to the limitation of suit provision, however, plaintiff cannot rely on the non-compete clause regardless of whether this claim sounds in contract or tort. To the extent that plaintiff offers other evidence to support this claim, plaintiff has not met its burdens of proof or persuasion.

Plaintiff argues that defendants intercepted customers who would have otherwise purchased products directly from the Tinder Box company website. From the evidence at trial, I am not persuaded that such transgressions ever occurred. Even if they did, plaintiff has not shown that defendants' conduct was intentional or purposeful. The trial testimony clearly established that any confusion or misdirection was unintentional and resulted from defendants' incomplete removal of Tinder Box references from their store and website. In short, plaintiff's tortious interference claim fails.

Plaintiff has, however, asserted valid and timely claims for violations of the Lanham Act. When the parties' relationship ended in mid-March 2007, defendants no longer had plaintiff's consent to use the Tinder Box name or sell its products. At that time, and entirely separate from the then-expired franchise agreement, federal law prohibited defendants from using plaintiff's protected marks or implying that their store was affiliated with Tinder Box. Plaintiff's Lanham Act claims do not rely on any terms of the franchise agreement, and they only arose after the mid-March withdrawal of consent. As a result, these claims are not barred by the agreement's limitation of suit provision.

In mid-March 2007, defendants attempted to remove all Tinder Box references from their business, but despite their efforts, the store and website continued to display Tinder Box's name and its marks. In their store, defendants issued register receipts with a "Tinder Box" header, and they sold packages of tobacco with Tinder Box's trademarked product-name on one side and a generic name on the other. Online, defendants continued to display Tinder Box e-mail addresses, and they failed to remove their newsletter archive, which portrayed them as a Tinder Box store.

Considering that plaintiff and defendants are in the same industry, and given defendants' prior operation as an authorized Tinder Box franchise, these uses of the Tinder Box name and its registered marks were likely to cause confusion or mistake among customers.  Specifically, these uses were likely to cause confusion about the origin of defendants' products, and they implied that defendants were still affiliated with the Tinder Box franchise when, in fact, the parties had terminated their relationship.  Defendants are liable for violations of the Lanham Act under 15 U.S.C. §§ 1114 and 1125, and plaintiff is entitled to attempt to establish its entitlement to damages.

In sum, I conclude that defendants are liable under the Lanham Act (Counts I and II of plaintiff's complaint), but that plaintiff is unsuccessful on the balance of its claims.  An order follows, and a trial will be scheduled to determine an appropriate award.

BY THE COURT:

/s/ John P. Fullam
John P. Fullam, Sr. J.